Case 2:19-cv-00069   Document 15   Filed on 05/14/19 in TXSD   Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
May 14, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DANIEL G SANCHEZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:19-CV-69 |
| | § | |
| CANDANCE R MOORE, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CASE

Plaintiff Daniel G. Sanchez is a Texas inmate appearing *pro se* and *in forma pauperis*. He filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A.

For purposes of screening, the undersigned recommends that Plaintiff's complaint be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for the reasons set forth below. The undersigned recommends further that the dismissal of this case counts as a "strike" for purposes of 28 U.S.C. § 1915(g).[1]

---

[1] Plaintiff is **WARNED** that if he accumulates three strikes, he will not be allowed to proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury. *See* 28 U.S.C. § 1915(g).

## I. JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II. PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is currently confined at the McConnell Unit in Beeville, Texas. In this civil rights action, Plaintiff names the following McConnell Unit officials: (1) Law Librarian Candance R. Moore; (2) Officer Megan R. Thompson; (3) Senior Warden Philip J. Sifuentes; (4) Medical Director Dr. Isaac Kwarteng; and (5) Medical Administrator Tanya Lawson. Plaintiff does not indicate whether he sues each defendant in his or her individual capacity, official capacity, or both. He claims that his constitutional rights were violated in connection with Defendants' failure to issue him a medical pass or otherwise allow him to use the restroom during his set time in the McConnell Unit's law library. Plaintiff seeks injunctive relief.

### A. Original Complaint and *Spears* Hearing

A *Spears*[2] hearing was conducted on March 18, 2019. The following representations were made either at the *Spears* hearing or in Plaintiff's original complaint (D.E. 1):

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

Plaintiff suffers from a number of medical issues including kidney disease, Type II diabetes, high blood pressure, an enlarged prostate, and an enlarged liver. Plaintiff's medical condition and medications increase the frequency in which he must urinate. Plaintiff testifies he often has to use the bathroom six times an hour. Plaintiff's need to urinate interferes with his ability to use the McConnel Unit law library.

Plaintiff reserves time in the law library daily for two-hour periods of time. Plaintiff works on his own cases as well as cases for other inmates. During his scheduled time in the law library, Plaintiff is allowed to use a restroom located nearby but is not permitted to return to the law library after using the bathroom. Plaintiff estimates that he is able to spend just over one hour during his library sessions before he must use the restroom. One of the medical providers has offered Plaintiff adult diapers for his urinary issues. Plaintiff declined that option and does not currently use them.

With regard to his cases, Plaintiff testified that he has not missed any deadlines or otherwise been prejudiced as a result of not being allowed to return to the law library and complete his scheduled two hours. However, Plaintiff maintains he should be able to use the bathroom and return to the law library.

Plaintiff is unsure whether the restroom policy for the law library is a formal TDCJ policy. He believes Law Librarian Moore may have created the policy for the McConnell Unit's law library. She enforces the policy with all inmates, including Plaintiff. Officer Thompson follows Law Librarian Moore's orders, including the direction for her to accompany Plaintiff to the restroom located near the law library. While a restroom is located inside the law library, inmates are not allowed to use it.

Plaintiff once received a medical pass to use the bathroom during his time at the Robertson Unit in Abilene, Texas, but it was revoked after a brief amount of time. Dr. Kwarteng and Medical Administrator Lawson informed Plaintiff that no policy exists at the McConnell Unit regarding the issuance of medical passes for any medical condition, including frequent urination. Medical Administrator Lawson informed Plaintiff that his bathroom issue is a security matter and not a medical matter. Plaintiff nevertheless sues Dr. Kwarteng and Medical Administrator Lawson for failing to provide him with a medical pass.

Plaintiff has communicated to Warden Sifuentes verbally and through letters about Plaintiff's issues regarding the law library. Warden Sifuentes has taken no action to help Plaintiff. All of Plaintiff's informal and formal grievances requesting a special bathroom pass have been denied.

    **B.**    **Supplemental Complaint**

On April 8, 2019, Plaintiff filed a letter which is construed as a motion to supplement or amend his complaint. (D.E. 12). Contrary to his assertion in the letter, Plaintiff alleges for the first time claims of harassment and retaliation against Defendants Moore and Thompson. In a separate order, the undersigned has granted Plaintiff's motion to supplement or amend. (D.E. 14).

Plaintiff has attached to his letter a Step 1 grievance, dated December 20, 2018, in which he claimed that Officer Thompson retaliated against Plaintiff by denying him a restroom break while he was in the law library and forcing him to return to his housing building. (D.E. 12, pp. 3-4). The reviewing officer denied this grievance, stating that

there was no evidence presented to substantiate Plaintiff's claims. (D.E. 12, p. 4). In his Step 2 grievance, dated February 6, 2019, Plaintiff reiterated his complaints that he is being denied restroom break in the bathroom located close to the law library. (D.E. 12, pp. 5-6). The reviewing officer denied this grievance, finding that the available evidence supports the conclusions in the Step 1 grievance. (D.E. 12, p. 6).

Plaintiff further alleges that, on April 2, 2019, Defendants Moore and Thompson harassed and retaliated against Plaintiff by forcing him to work at a table with three other inmates and no typewriter. (D.E. 12, p. 1). Plaintiff alleges the work space was not large enough to accommodate the inmates. (D.E. 12, p. 2).

## III. LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the

opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id*.

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the

victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

## IV. DISCUSSION

### A. Supervisory Defendant

It is well established that a prison supervisor cannot be held liable for the misconduct of his or her subordinates. *See Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins,* 828 F.2d at 303-04. *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

"Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Mere knowledge and acquiescence on a supervisor's part is insufficient to create supervisory liability under § 1983." *Doe v. Bailey*, No. H-14-2985, 2015 WL 5737666, at *9 (S.D. Tex. Sep. 30, 2015) (citing *Iqbal*, 556 U.S. at 677).

Taken as true, Plaintiff's allegations against Warden Sifuentes suggest that he only had knowledge of Plaintiff's issues concerning his use of the restroom during his law library time and the failure to provide him with a medical pass. Plaintiff, however, alleges no specific facts to indicate that Warden Sifuentes, in his role as a supervisory official, personally participated in any actions to deprive Plaintiff of his constitutional

rights or implemented any unconstitutional policies which resulted in injury to Plaintiff. Accordingly, it is respectfully recommended that Plaintiff's claims against Warden Sifuentes in his supervisory capacity be dismissed for failure to state a claim and/or as frivolous.

### B. Due Process

Liberally construed, Plaintiff claims that Defendants Kwarteng and Lawson violated his due process rights by failing to issue him a medical pass for frequent urination. Procedural due process applies only with respect to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). "[I]n determining whether state action has violated an individual's right to procedural due process, the district court must first address whether or not the state action has deprived the person of a protected life, liberty, or property interest." *Whitlock v. Stephens*, No. 5:14-cv94, 2016 WL 7168029, *4 (E.D. Tex. Oct. 5, 2016) (citing *Augustine v. Doe*, 740 F.2d 322, 327 (5th Cir. 1984)).

In *Whitlock*, inmate Tarrance Whitlock similarly complained that prison officials at the Telford Unit violated his due process rights by failing to follow prison policy and issue a medical pass for his frequent urination. *Whitlock*, 2016 WL 7168029, *4. Like Plaintiff, inmate Whitlock was not allowed to return to his prison's law library to finish his two-hour session upon using a nearby restroom. *Id.* at 1. Whitlock was prescribed a high blood pressure medication which caused frequent urination. *Id.* Despite his need for frequent urination, Whitlock was told that the Telford Unit did not issue medical passes under those circumstances. *Id.* at 1-2.

In evaluating Whitlock's claims, the court cited another case from the Eastern District of Texas where evidence was presented showing that medical passes would only be issued if an inmate suffered from urinary problems. *Id.* (citing *Lowe v. Green*, No. 6:07cv5, 2007 WL 1217875, at *2 (E.D. Tex. Apr. 24, 2007). Even assuming a prison policy existed at the Telford Unit where medical passes would be issued for urinary disorders, the *Whitlock* court explained that such policy would not require the issuance of a medical pass where an inmate complained only about his medication causing more frequent urination. *Id.* at *4-5. Whitlock, therefore, failed to show that the refusal to issue him a pass amounted to a violation of prison rules, much less the due process clause. *Id.*

Plaintiff alleges in this case that: (1) he suffers from a number of medical issues including kidney disease, Type II diabetes, high blood pressure, an enlarged prostate, and an enlarged liver; (2) his kidneys are deteriorating to the point where he eventually will end up on dialysis; and (3) Plaintiff takes diuretics which is a medication that increases his need to urinate. Plaintiff, however, alleges no facts to indicate that the McConnell Unit has a policy regarding medical passes for frequent urination and what medical conditions would entitle a prisoner to such a medical pass.

It is well settled in the Fifth Circuit that allegations of prisoner's failing to follow prison policy, without more, does not state a constitutional cause of action by itself. *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986). Plaintiff's allegations, taken as true, fail to indicate that a policy existed at the McConnell Unit regarding medical passes for any medical issue, including frequent urination. Even if a policy existed and

Plaintiff was eligible to obtain a medical pass due to his medical condition, he has no liberty or property interest in receiving a medical pass. *See Whitlock*, 2016 WL 7168029, at *4 (explaining that prisoners have no liberty or property interest in having a medical pass). Because Plaintiff has failed to state a plausible due process claim, it is respectfully recommended that such claim be dismissed against Defendants Kwarteng and Lawson as frivolous and/or for failure to state a claim for relief.

### C. Access to Courts

Plaintiff further claims that Defendant Moore has effectively denied him access to the courts by enforcing a policy where he would not be allowed back in the law library after going to the nearby restroom. Prisoners have a constitutionally protected right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 360 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). The right does not guarantee any "particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356. *See also Jones*, 188 F.3d at 325 (the right provides a reasonable opportunity to file nonfrivolous legal claims challenging convictions or conditions of confinement).

Because the right of access is not a "freestanding right," to state a cognizable First Amendment claim, the plaintiff must demonstrate actual injury resulting from an alleged denial of access to the courts. *Lewis,* 518 U.S. at 351; *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999). Without a showing of an actual injury, a plaintiff lacks standing to pursue a claim of denial of access to the courts. *Lewis*, 518 U.S. at 349.

10 / 20

To meet the standing requirement, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Plaintiff "must establish that he has a personal stake in the alleged dispute and that the alleged injury suffered is particularized as to him." *Id.* at 819. In particular, to succeed on a claim of denial of access to courts, a plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *See Lewis*, 518 U.S. at 356. He must show "that his position as a litigant was prejudiced" as a direct result of the denial of access. *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996).

Plaintiff alleges that: (1) he reserves time in the law library daily for two-hour periods of time; (2) during his time in the law library, he works on his cases as well as cases for other inmates; (3) he is able to spend juts over an hour during his library sessions before he must use the restroom; (4) Law Librarian Moore may have created the policy or practice of not allowing inmates to return to the law library after going to the nearby restroom; (5) Officer Thompson follows the policy set by Law Librarian Moore and is directed by her to accompany Plaintiff to the nearby restroom; and (6) he has not missed any deadlines or otherwise been prejudiced as a result of not being allowed to return to the law library after going to the restroom. Taken as true, Plaintiff's allegations fail to state a plausible First Amendment claim for denial of access to courts because his allegations fail to suggest he has been denied the ability to present a case or otherwise has lost an actionable claim. Because he fails to allege an actual injury, the undersigned

respectfully recommends that Plaintiff's First Amendment claim against Defendants Moore and Thompson be dismissed as frivolous and/or for failure to state a claim for relief.

### D. Deliberate Indifference

#### *(1) Defendant Moore's Restroom Policy*

Liberally construed, Plaintiff claims that Law Librarian Moore's policy and enforcement of same as to Plaintiff regarding restroom usage constituted deliberate indifference to his health. The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal quotations omitted)).

An Eighth Amendment violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. *Farmer*, 511 U.S. at 834. The test for deliberate indifference has both an objective and subjective prong. Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm." *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)). To prove the subjective prong of the deliberate indifference test, the inmate "must show both: (1) that the defendant was aware of facts from which the inference of an excessive risk to the

[inmate's] health or safety could be drawn; and (2) that the defendant actually drew the inference that such potential for harm existed." *Trevino*, 2017 WL 1013089, at *3 (citing *Farmer*, 511 U.S. at 397 and *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999)).

The deliberate indifference standard "is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Deliberate indifference is more than mere negligence. *Farmer*, 511 U.S. at 835. "Even proof of gross negligence does not establish deliberate indifference." *Levine v. Taylor*, No. 3:12-CV-186, 2017 WL 1215426, at *7 (S.D. Tex. Mar. 31, 2017) (citing *Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013)).[3] Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citations omitted).

Plaintiff alleges no facts to suggest that Law Librarian Moore's policy and enforcement of same exposed Plaintiff to a substantial risk of serious harm. Plaintiff was never denied the ability to visit the restroom during his law library sessions, and there is no suggestion he ever suffered any physical injury as a result of Law Librarian Moore's actions. *See Whitlock*, 2016 WL 7168029, at *6-7 (recommending that inmate Whitlock's deliberate indifference claim be dismissed for failure to state a claim in part because he did not allege he had suffered any physical harm as a result of the enforcement of the law library's restroom policy). Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claim arising from the

---

[3] The Fifth Circuit has clarified that "gross negligence . . . is a heightened degree of negligence, while [deliberate indifference] is a lesser form of intent." *Whitley*, 726 F.3d at 641 (internal quotations and citation omitted).

enforcement of Law Librarian Moore's restroom policy be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### (2) Defendants Kwarteng and Lawson

Plaintiff claims that Dr. Kwarteng and Medical Administrator Lawson acted with deliberate indifference to his serious medical needs by not issuing him a medical pass for his frequent urination. Prisoners are protected from cruel and unusual punishment by the Eighth Amendment. While not mandating a certain level of medical care for prisoners, the Eighth Amendment imposes a duty on prison officials to ensure that inmates receive adequate medical care. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

Prison officials are liable for failure to provide medical treatment if they are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Id.* at 104-05.

In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). Although inadequate medical treatment may rise to the level of a constitutional violation, "unsuccessful medical treatment and acts of

negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with [his] medical treatment, absent exceptional circumstances." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012).

Plaintiff alleges that both Dr. Kwarteng and Medical Administrator Lawson informed Plaintiff that no policy existed at the McConnell Unit regarding the issuance of medical passes for any medical condition, including frequent urination. Plaintiff otherwise provides nothing to suggest that Dr. Kwarteng or Medical Administrator Lawson engaged in conduct evincing a wanton disregard or otherwise constituting deliberate indifference to Plaintiff's serious medical needs. Indeed, Plaintiff acknowledges he was offered the option of wearing adult diapers, which can alleviate certain issues associated with the loss of bladder control. Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claims against Dr. Kwarteng and Medical Administrator Lawson be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### E. Retaliation

Plaintiff claims in his Supplemental Complaint that he has been subjected to retaliation and harassment by Law Librarian Moore and Officer Thompson. Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Retaliation is actionable "only if the retaliatory act 'is capable of deterring a person of ordinary firmness from

further exercising his constitutional rights.'" *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006)).

The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. *Morris*, 449 F.3d at 686. Thus, "[a] prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). "Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities, and prison officials may not retaliate against inmates for engaging in such protected inmates." *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009) (citing *Morris*, 449 F.3d at 684).

The Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166). In addition, the Fifth Circuit has concluded that some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Morris*, 449 F.3d at 686. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.*

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones*, 188 F.3d at 324-25 (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998)). An

inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). "Mere conclusory allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim." *Jones*, 188 F.3d at 325. The inmate must produce direct evidence of motivation or a chronology of events from which retaliation may be inferred. *Id.* In other words, a successful claim of retaliation requires a showing that, but for some retaliatory motive, the complained of adverse incident would not have occurred. *Woods*, 60 F.3d at 1166.

Plaintiff claims that Officer Thompson retaliated against him by denying him a restroom break while he was in the law library and forcing him to return to his housing building. (D.E. 12, pp. 3-4). As discussed above, however, "the invocation of a specific constitutional right is the first element of a retaliation claim." *Williams v. Sellers*, No. H-11-4287, 2014 WL 794191, at *11 (S.D. Tex. Feb. 26, 2014). Plaintiff makes no allegation that he exercised a specific constitutional right preceding Officer Thompson's conduct.

Plaintiff also fails to allege that he was subjected to an adverse act. As noted above, to prevail on a retaliation claim, Plaintiff must demonstrate that he suffered an adverse act that "would chill or silence a person of ordinary firmness" from complaining in the future. *Morris,* 449 F.3d at 685-86. Plaintiff's allegations indicate that he subsequently filed a grievance against Officer Thompson for denying him a restroom break near the library. Thus, it is clear that Officer Thompson's action had no chilling effect on Plaintiff's ability to complain. Accordingly, the undersigned respectfully

recommends that Plaintiff's allegations regarding the Officer Thompson's conduct in this instance be dismissed with prejudice as frivolous and/or for failure to state a claim.

Plaintiff further alleges that, on April 2, 2019, Law Librarian Moore and Officer Thompson retaliated against Plaintiff by forcing him to work at a table with three other inmates and no typewriter and denying him access to the typewriter table. (D.E. 12, pp. 1-2). Plaintiff does not specify whether these actions came in response to Plaintiff's exercise of a constitutional right, such as the filing of this case. Furthermore, the actions taken by Defendants Moore and Thompson are of such a *de minimis* nature as to not form the basis of a § 1983 claim. *See Garner v. Moore*, 2:13-CV-383, 2014 WL 4082510, at *3 (S.D. Tex. Aug. 19, 2014) (concluding that the alleged retaliatory acts of limited talking privileges, verbal reprimand, temporary suspension of library privileges, and delays in supply delivery are *de minimis*); *Kolberg v. Pille*, No. 1:12-CV-280, 2012 WL 6967234, at *5 (E.D. Tex. Dec. 14, 2012) (concluding that the act of separating one inmate from another inmate "in the law library for a day is *de minimis*, and cannot form the basis for a retaliation claim"). Accordingly, the undersigned respectfully recommends that Plaintiff's allegations of retaliation and harassment against Defendants Moore and Thompson be dismissed with prejudice as frivolous and/or for failure to state a claim.

## V.     CONCLUSION

Because Plaintiff has failed to state a cognizable constitutional claim in this action against Defendants, it is respectfully recommended that Plaintiff's complaint be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim for relief

pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).  It is respectfully recommended further that this dismissal count as a "strike" for purposes of 28 U.S.C. § 1915(g), and that the Clerk of Court be **INSTRUCTED** to send notice of this dismissal to the Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov.

    Respectfully submitted this 14th day of May 2019.

                                                              Jason B. Libby
                                          United States Magistrate Judge

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).